CRUISE CONNECTIONS CHARTER MANAGEMENT 1, LP and Cruise Connections Charter Management GP, Inc., Appellants

v.

ATTORNEY GENERAL OF CANADA, representing the Royal Canadian Mounted Police, et al., Appellees.

No. 09–7060.

United States Court of Appeals, District of Columbia Circuit.

June 21, 2010.

Jack M. Strauch, Esquire, Strauch & Fitzgerald, Winston–Salem, NC, Cathy A. Hinger, Deborah J. Israel, Womble Carlyle Sandridge & Rice, PLLC, Washington, DC, for Appellants.

Scott H. Christensen, John M. Townsend, Hughes Hubbard & Reed LLP, Washington, DC, for Appellees.

Before TATEL, Circuit Judge, and SILBERMAN * and WILLIAMS, Senior Circuit Judges.

### *ORDER*

PER CURIAM.

Upon consideration of appellees' petition for panel rehearing filed on May 6, 2010, and the response thereto, it is

**ORDERED** that the petition be denied.

SILBERMAN, Senior Circuit Judge, concurring in the denial of rehearing:

I continue to believe the panel's opinion is correct and write only to refer to an alternative argument raised by Cruise Connections which we did not reach. I

---

* A statement by Senior Circuit Judge Silberman concurring in the denial of rehearing is attached.

think this argument also supports our decision and thus makes this case even less deserving of rehearing.

Besides claiming that the loss of business under the charter party agreements qualified as a "direct effect" in the United States under the FSIA, Cruise Connections also contended that were it not for Canada's breach, money would have been deposited in a bank account in the United States, and, under *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992), this also constitutes a direct effect. Cruise Connections pointed out that the contract required it to send the Canadian government an invoice which was to include "financial codes." According to it, financial codes refer to the communication format that is used to identify a bank to which money is to be wired. So, it was argued, that by directing it to provide financial codes, the contract gave Cruise Connections an option to direct payment to a bank of its choosing. Evidence in the record shows it opened a bank account in Winston–Salem, North Carolina and would have requested that payment be made there.

I agree with Cruise Connections that the reference to financial codes is most naturally read to give it an option to direct payment to the bank of its choosing. While Canada argued that the financial codes were to identify the Canadian government account *from which* the money would be taken, it seems implausible to me that the contract would require Cruise Connections to choose the account from which payment would come—how would it know such codes and why would it care where payment came from?

Once it is established that the contract gave Cruise Connections an option to direct payment to the place of its choosing,

there is very little difference between this case and *Weltover*. It will be recalled that in *Weltover*, the plaintiff-bondholders had the option to designate payment to any one of four cities. When the bonds matured and the Argentinian government attempted to unilaterally extend the time for payment, several bondholders [1] refused to accept the rescheduling and, subsequent to the alleged breach, asked for full payment in New York. *Id.* at 610, 112 S.Ct. 2160. The alleged breach of contract, the Supreme Court found, caused a direct effect in the United States because, "[m]oney that was supposed to have been delivered to a New York bank was not forthcoming." *Id.* at 619. Similarly, had the contract in this case not been terminated, Cruise Connections would have requested and received payment at its bank in North Carolina. Under *Weltover*, I believe this meets the direct effect exception and is thus an alternative ground for our decision.

---

1. The plaintiff-bondholders in *Weltover* were, unlike Cruise Connections, not even American entities.